# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kauffman Metals, LLC,        :

           Petitioner      :

                              :

           v.                :   No. 2293 C.D. 2014

                              :   SUBMITTED:  July 2, 2015

Department of Labor and Industry,     :

Office of Unemployment               :

Compensation Tax Services,        :

           Respondent    :

BEFORE:     HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
JUDGE LEADBETTER                       FILED:  October 15, 2015

       Kauffman Metals, LLC, (Kauffman) petitions for review of the final decision and order of the Department of Labor and Industry (the Department) that denied Kauffman's petition for reassessment of unemployment compensation tax assessed by the Department's Office of Unemployment Compensation Tax Services (OUCTS).  We affirm.

       Located in Bedford, Pennsylvania, Kauffman constructs metal buildings and sells related building materials.  November 19, 2014 Final Decision, Finding of Fact (F.F.) No. 36.  Kauffman was incorporated until 2004, when it

became a partnership. *Id*., No. 1.[1] From year to year, the number of partners has varied. *Id*., No. 2. In 2008, there were thirty-two partners and in 2009, there were thirty-five. *Id*., No. 43. Partners all receive a weekly draw based on the hours they work and each has different responsibilities. *Id*., Nos. 7 and 8. Joseph Kauffman, who provided $9300 in capital contributions and owned 79.5% of the business in 2008 and 78.2% in 2009, has always held the majority interest. *Id*., Nos. 4, 42 and 44.[2] The terms in the respective partnership agreements govern the partnership and, pursuant thereto, voting rights are in the same proportion as the capital percent investment and workers are not considered employees. *Id*., Nos. 3, 12 and 15. Accordingly, Joseph Kauffman had an approximately 79.5% voting right while the others had one percent or less. *Id*., No. 47.[3] In addition to partners, Kauffman acknowledged two employees—a sales person and a secretary. Accordingly, it withheld taxes for those two employees. *Id*., Nos. 5 and 6.

The Department's investigation of Kauffman was triggered by John Moles' unemployment compensation claim indicating that he had worked for

---

[1] It is undisputed that Kauffman became a partnership in 2004. Accordingly, to the extent that Finding of Fact No. 1 differs from Finding of Fact No. 37, which indicates 2006, we reject the latter fact-finding as unsupported by the evidence.

[2] We reject Kauffman's challenge to Finding of Fact No. 42, regarding Joseph Kauffman's capital contribution. OUCTS's tax agent testified to that amount and Kauffman acknowledged that amount on page fourteen of its brief.

[3] Kauffman challenges Finding of Fact No. 47 because the fact finder uses the term "workers," thereby concluding that the partners are employees. In addition, it contends that the Deputy Secretary disregarded the testimony of Joseph and Tim Kauffman regarding the individuals' status. It is within the purview of the agency to determine the credibility of witnesses and to determine the weight to be accorded evidence. *Aloe Coal Co. v. Dep't of Transp*., 643 A.2d 757, 762 (Pa. Cmwlth. 1994). In any event, we perceive the purpose of the fact-finding to be a description of the distribution of voting rights and how that relates to an individual's meaningful stake in the partnership, not a legal conclusion that a partner is an employee.

Kauffman. *Id*., No. 32. Moles, however, was not listed on Kauffman's payroll records. *Id*., No. 39. In March 2010, OUCTS tax agent Kevin Metz met with Moles and, thereafter, decided to conduct an audit and wage investigation of Kauffman for potential compliance with the Unemployment Compensation Law (Law).[4] *Id*., Nos. 31 and 33.

In May 2010, Metz conducted the audit, which encompassed a review of the partnership agreement for each partner for years 2008 and 2009 and Kauffman's "federal tax returns, which included the K-1s, payroll records, W-2s, W-3, 940, 941s, 1099s and 1096, as well as a disbursement report which was a transaction detail by account report." *Id*., Nos. 34, 38 and 40. As a result of the audit, Metz determined that Joseph Kauffman made the management decisions and always had majority voting rights. *Id*., Nos. 46 and 48.[5] In addition, Metz opined that Kauffman's "minority partners did not provide vital capital to the business and they did not stand to lose more than the approximately $100 they invested if the business failed." *Id*., No. 50.[6] In that regard, the partnership agreements for 2008

---

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-918.10.

[5] To the extent that Kauffman challenges Finding of Fact Nos. 46 and 48 on the ground that the Deputy Secretary accepted certain testimony and ignored other testimony, *e.g.* the testimony of Joseph Kauffman, we reject its challenge. Credibility and the weight to afford the evidence are within the purview of the agency. *Aloe Coal Co.*, 643 A.2d at 762.

[6] Kauffman challenges Finding of Fact No. 50 on the ground that it contradicts the testimony of its accountant, Galen Martin. Martin testified that a one percent loss in 2006 amounted to $1330, which is greater than $100. The fact finder, however, determined: "Where there is any dispute, I credit the testimony of Mr. Metz." November 19, 2014 Final Decision at 12 (footnote omitted). Accordingly, the fact that Martin's testimony differed is of no moment. In any event, the fact finder acknowledged that, over the years, workers received distributions of both profits and losses. *Id*., No. 10. Notwithstanding the precise amounts at issue, the real question is whether those profits and losses were indicative of a meaningful stake in the partnership such that it was *bona fide* during the time period at issue.

3

and 2009 indicated that, generally, the capital contributions were $100. *Id*., No. 41.[7] Metz concluded, therefore, that Kauffman was not a *bona fide* partnership "because the partners were being paid an hourly wage, they had no risk, they did not come together to form a partnership for purposes of sharing in profits and losses, and they had very little, if any management rights." *Id*., No. 51.[8] Accordingly, OUCTS issued a December 2011 notice of assessment against Kauffman in the amount of $40,703.11, which included unemployment compensation tax on alleged wages, interest and penalties for calendar years 2007 through 2010 and the first two quarters of 2011. *Id*. at p.1 and No. 53.

Subsequently, Kauffman filed a petition for reassessment in January 2012, *inter alia*, claiming that the assessment was incorrect because the alleged employees were owners/partners and, therefore, not subject to unemployment compensation contributions. *Id*., No. 54.[9] In May 2014, a fact-finding hearing was held where both sides presented evidence. The Deputy Secretary determined that

---

[7] Kauffman challenges Finding of Fact No. 41 on the ground that Metz's testimony on cross examination contradicted his testimony on direct. On direct, Metz testified that most of the partnership agreements for 2008 and 2009, *other than that of Joseph Kauffman*, reflected capital contributions of roughly $100. May 15, 2014 Hearing, Notes of Testimony (N.T.) at 18-19; Reproduced Record (R.R.) at 382a-83a. In this regard, Metz's testimony was not contradicted on cross. Accordingly, we reject Kauffman's challenge.

[8] Kauffman challenges Finding of Fact No. 51 as a conclusion of law. It also challenges a similar fact-finding, No. 49, which sets forth Metz's understanding of the definition of a *bona fide* partnership. While the determination of whether an entity constitutes a *bona fide* partnership is a conclusion of law, *Commissioner of Internal Revenue v. Culbertson*, 337 U.S. 733, 742 (1949), Metz's understanding of the term is merely his opinion. The significance of his opinion is the fact that it generated OUCTS's notice of assessment, not that his understanding is necessarily correct as a matter of law. Accordingly, these fact-findings can stand as part of the background that led to the notice of assessment.

[9] Kauffman challenges Finding of Fact No. 54 based on the ground that there were other grounds for the petition for reassessment. In light of the fact that Kauffman did not pursue any of those grounds, its challenge to this fact-finding is without merit.

the Department met its burden of establishing that the workers were employees and that Kauffman failed to prove that it was a *bona fide* partnership, exempt from the Law. Accordingly, she denied the petition for reassessment. In December 2014, Kauffman filed the petition for review at issue, challenging numerous fact-findings and two conclusions of law.

On appeal, Kauffman raises the following relevant issues: 1) whether Findings of Fact Nos. 45, 52, 55 and 58 are supported by substantial evidence;[10] 2) whether the Department erred in analyzing Kauffman's non-exempt status under Section 4(*1*)(2) of the Law, 43 P.S. § 753(*1*)(2); 3) whether the Department erred in determining that Kauffman was not a *bona fide* partnership; 4) whether the final decision conflicts with the Department's advertised position in published pamphlets on its website; and 5) whether the final decision violates Kauffman's constitutional rights. We decline to address Kauffman's proffered issue pertaining to whether the final decision conflicts with the Limited Liability Company Law of 1994[11] and reject its attempt to present itself as a limited liability corporation (LLC) for purposes of this appeal.[12] Accordingly, we will regard it as a general partnership.

---

[10] To the extent that we have already resolved any issues with Findings of Fact Nos. 37, 41, 42, 46, 47, 48, 49, 50, 51 and 54 in the footnotes accompanying our recitation of the background, there is no need to further address them.

[11] Act of December 7, 1994, P.L. 703, *as amended*, 15 Pa. C.S. §§ 8901-8998.

[12] Both in its petition for review and in its brief to this Court, Kauffman has designated itself as "Kauffman Metals, LLC." Asserting that it became a LLC on January 1, 2004, it argues that the Department's decision conflicts with the Limited Liability Company Law of 1994 and that the Deputy Secretary in rendering her decision attempted to rewrite that law regardless of the parties' intent. As the Department points out, however, Kauffman characterized itself as an LLC for the first time on appeal and submitted no evidence in the proceedings below that it was an LLC. Further, the Department observes that the focus below always remained on whether Kauffman was a *bona-fide* partnership. We agree.

**(Footnote continued on next page…)**

5

In general, the Law imposes an unemployment compensation tax on wages paid to individuals for services that constitute employment. "Wages" are defined as "all remuneration, paid by an employer to an individual with respect to his employment . . . ." Section 4(x) of the Law, 43 P.S. § 753(x). "Employment" is defined as "all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, including service in interstate commerce, and service as an officer of a corporation." Section 4(*l*)(1) of the Law, 43 P.S. § 753(*l*)(1). An "employe" is defined as "every individual . . . who is performing . . . services for an employer in an employment subject to this act." Section 4(i) of the Law, 43 P.S. § 753(i).

The Law "places a very heavy burden on the applicant when it makes payment to anyone who has performed a service to excuse or exempt that payment from unemployment compensation tax." *Hoey v. Dep't of Labor and Indus.,*

_____

**(continued…)**

As an initial matter, none of the record references it cites on page 4 of its brief support its assertion that it is a LLC. Further, evidence from its accountant belies Kauffman's designation of itself as a LLC during the relevant time period. In a letter submitted as part of the petition for assessment, Kauffman's accountant 1) designated his client as Kauffman Metals; 2) noted that all business was conducted in the name of Kauffman Metals; 3) noted his understanding that Pennsylvania law provides that all partnerships are general partnerships unless specifically designated as LLC; 4) opined that "an objective review and weighing of the facts would leave one to conclude that Kauffman Metals is and has been a valid general partnership since January 1, 2004"; and 5) attached a power of attorney listing Kauffman Metals as a general partnership. January 12, 2012, Petition for Assessment, Record, Item No. 1 at pp. 4-9; R.R. at 4a-9a. In addition, the caption of the May 2014 transcript, various scheduling documents and the Department's final decision reflect "Kauffman Metals." Finally, Kauffman has not challenged a key fact-finding characterizing its formation: "The tax returns identify Petitioner as a domestic general partnership." November 19, 2014 Final Decision, F.F. No. 20. Where a fact-finding is not challenged, it is binding on appeal. *Owens v. Unemployment Comp. Bd. of Review*, 748 A.2d 794, 797 n.3 (Pa. Cmwlth. 2000). Accordingly, we reject Kauffman's attempts to shift the analysis to the Limited Liability Company Law of 1994. Even if Kauffman became a LLC after its petition for assessment, its identity during the time period at issue must govern our analysis.

6

*Bureau of Employment Sec.*, 499 A.2d 1124, 1127 (Pa. Cmwlth. 1985). A person receiving wages for his services is presumed to be an employee and the employer bears a heavy burden to overcome that statutory presumption. *Jia v. Unemployment Comp. Bd. of Review*, 55 A.3d 545, 548 (Pa. Cmwlth. 2012); *Electrolux Corp. v. Dep't of Labor and Indus., Bureau of Employer Tax Operations*, 705 A.2d 1357, 1359-60 (Pa. Cmwlth. 1998). Once it has been established that an individual has performed services for wages, the burden shifts to the employer to show why the Law permits an exemption. *Hoey*, 499 A.2d at 1127. Specifically, an employer challenging the assessment of unemployment compensation tax has the burden of showing that it is entitled to a statutory exemption from "employment" under the employer's particular circumstances. *Victor v. Dep't of Labor & Indus.*, 647 A.2d 289, 291 (Pa. Cmwlth. 1994). In that regard, certain "services" are excluded from "employment." Section 4(*1*)(2)(B) provides:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, *unless and until it is shown to the satisfaction of the department that - - (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.*

43 P.S. § 753(*1*)(2)(B) (emphasis added). Pertinent to the present case, if a business is a *bona fide* partnership, then services performed by a partner may be excluded from "employment" subject to unemployment compensation tax.

7

As an initial matter, we address whether Findings of Fact Nos. 45, 52, 55 and 58 are supported by substantial evidence.[13]  Finding of Fact No. 45 provides that the audit indicated that, between December 1, 2008 and March 24, 2009, Kauffman paid Moles an hourly rate for the hours he worked, plus a one percent sales commission that dropped to one-half percent.  Kauffman asserts that this fact-finding cannot stand because it is based on Metz's testimony regarding his interpretation of a document provide by Kauffman, which it asserts contradicts other evidence of record indicating that Moles received business profits.  Kauffman's challenge is without merit.  The fact that nominal partners received profits was not in dispute.  What was in dispute was whether the amount and/or percentage of those profits and/or losses warranted a determination that the nominal partners had a significant stake in the enterprise.

Finding of Fact No. 52 indicates that Metz discussed his findings with Joseph Kauffman and Kauffman's accountant, who both disagreed with his conclusion that Kauffman was not a *bona-fide* partnership.  Kauffman maintains that there is no evidence in the record to support that finding and that the notice of assessment was not issued until nineteen months later.  It simply is not true that there is no support in the record for this finding.  Metz testified that, on May 11, 2010, he spoke with Joseph Kauffman regarding his findings and, at the same time,

---

[13] Substantial evidence "is defined as relevant evidence upon which a reasonable mind could base a conclusion."  *Stage Rd. Poultry Catchers v. Dep't of Labor and Indus., Office of Unemployment Comp. Tax Servs.*, 34 A.3d 876, 885 (Pa. Cmwlth. 2011).  A determination as to the existence of substantial evidence must be based on an examination of the record as a whole.  *Id*. at 885-86.  In addition, we must examine the testimony in the light most favorable to the party that prevailed below, giving it the benefit of any inferences that can logically and reasonably be drawn from the evidence.  *Id*. at 885.

8

made a telephone call from Kauffman's office to the accountant. May 15, 2014 Hearing, Notes of Testimony (N.T.) at 31; Reproduced Record (R.R.) at 395a.

Finding of Fact No. 55 provides that Metz stated that the profits that workers received between 2007 and 2010 ranged from $1.66 to $150.31, which indicated that those workers made their living from their hourly wages and not from their profits. Kauffman contends that the finding should not stand because it characterizes the nominal partners as workers, which is a conclusion of law, and because there is no record support for the finding itself. First, we do not find the use of the term "worker" to be binding such that it vitiates the viability of the finding. Second, Metz testified to the relatively low amounts during his direct testimony. *Id.* at 38-40; R.R. at 402a-04a. Third, Kauffman did not elaborate on its contention that the tax returns contradict this testimony.

Finding of Fact No. 58 provides that Joseph Kauffman completed an unemployment compensation questionnaire in 2010 indicating that Moles was discharged due to his refusal to make necessary changes after customers and fellow employees complained. Further, it provides that Metz stated that the form indicated that Moles was fired, which is indicative of an employer-employee relationship. Kauffman challenges this fact-finding on the ground that no supporting documentation was provided and that it constitutes a conclusion of law. Kauffman's challenge is without merit. Although the questionnaire is not listed as an exhibit and would have been the best evidence of its contents, Metz testified as to the questionnaire, which was referred to as Petitioner's Exhibit 2 at the hearing. *Id.* at 60-62; R.R. at 424a-26a. As a witness for the prevailing party, we consider Metz's testimony in the light most favorable to the Department, giving it the benefit of any inferences that can logically and reasonably be drawn from the

9

testimony. *Stage Rd. Poultry Catchers v. Dep't of Labor and Indus., Office of Unemployment Comp. Tax Servs.*, 34 A.3d 876, 885 (Pa. Cmwlth. 2011). In addition, Metz's opinion that a firing was indicative of an employer-employee relationship is just that—his opinion. Accordingly, we conclude that Kauffman's substantial evidence challenges are without merit.

Kauffman next argues that the Department erred in analyzing the partnership's non-exempt status under Section (4)(*l*)(2) of the Law because the definition of "employment" references a contract of hire and a corporation, neither of which applies to the present case. The definition of "employment," however, includes service performed for remuneration by an individual under an implied contract. As previously noted, "employment" encompasses "all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, including service in interstate commerce, and service as an officer of a corporation." 43 P.S. § 753(4)(*l*)(2). In addition, we must analyze "employment" as a matter of substance, rather than a matter of form. For example, even though the respective partnership agreements provide that the partners are not employees, the mere recitation of that assertion does not necessarily make it so. *See Historic Boardwalk Hall, LLC v. Comm'r*, 694 F.3d 425, 449 (3d Circ. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 2734 (2013) (holding that we should not accept at face value the artificial constructs of a partnership agreement) and *Hoey*, 499 A.2d at 1127 (holding that we must look beyond subcontractors' agreements to the true facts of employment to ascertain whether a worker was truly an independent contractor or an employee).

Moreover, we agree that the Department met its threshold burden of proving that the nominal partners performed services for wages, which is deemed

to be employment subject to the Law under Section 4(*1*)(2). In that regard, the Deputy Secretary relied on the testimony of Kauffman's accountant, and Joseph and Tim Kauffman. She noted their testimony that the individuals were paid an hourly rate for their services, regardless of Kauffman's profits or losses. May 15, 2014 Hearing, N.T. at 67, 96 and 109; R.R. at 431a, 460a and 473a.[14] In addition, Kauffman did not challenge Finding of Fact No. 7, providing that the partners all received weekly draws based on the hours that they worked. *Owens v. Unemployment Comp. Bd. of Review*, 748 A.2d 794, 797 (Pa. Cmwlth. 2000) (where a fact-finding is not challenged, it is binding on appeal). Accordingly, especially in light of the strong presumption that a person receiving wages for his services is presumed to be an employee, *Jia*, 55 A.3d at 548, we conclude that the Department did not err in analyzing Kauffman's status under Section (4)(*l*)(2) of the Law. We turn now to the issue of whether Kauffman established its statutory exemption from employment based on its status as an alleged *bona fide* general partnership.

---

[14] Kauffman challenges the Deputy Secretary's reliance on the testimony of these three witnesses because the Department did not call them as adverse witnesses during its case-in-chief. As the Department notes, "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." Section 505 of the Administrative Agency Law, 2 Pa. C.S. § 505. Further, "[a]n agency has broad discretion under this rule in admitting or rejecting evidence." *Gwinn v. Pa. State Police*, 668 A.2d 611, 614 (Pa. Cmwlth. 1995).

Moreover, as the Department notes, Metz testified during the case-in-chief that the nominal partners performed various services for which they were paid hourly wages and that, given the amount of any profits, they could not be living from those profits. May 15, 2014 Hearing, N.T. at 22-24, 33, 40-41; R.R. at 386a-88a, 396a and 404a-05a. In light of the Deputy Secretary's determination that Metz's testimony was credible and the low threshold applicable to the "employee" presumption, we agree that the Department met its threshold burden.

11

In order to determine whether a partnership is *bona fide*, the United States Supreme Court has applied a totality of the circumstances test:

> The question is . . . whether, considering all the facts - - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

*Comm'r of Internal Revenue v. Culbertson*, 337 U.S. 733, 742 (1949). Regarding the *Culbertson* test, the Third Circuit commented: "In order to be a *bona-fide* partner for tax purposes, a party must have a 'meaningful stake in the success or failure' of the enterprise." *Historic Boardwalk Hall, LLC*, 694 F.3d at 449. The question of whether there is a meaningful risk is a question of law, subject to plenary review. *Id.* at 457 n.57.

When analyzing the factors relevant to ascertaining the *bona fide* nature of a partnership, such factors as the partnership structure and what the Third Circuit referred to as the artificial constructs of a partnership agreement do not, in and of themselves, constitute a *bona fide* partnership. In the present case, the Deputy Secretary found the following factors indicative of a non *bona-fide* partnership: 1) workers were paid an hourly rate for the work they performed, which was not dependent on whether the partnership experienced a profit or loss; 2) workers were not living from the profits they made, but instead from the wages they earned for the services they performed; 3) workers had no meaningful stake in the partnership's success or failure; 4) workers did not share in the management of the business; and 5) at all times, Joseph Kauffman held the majority ownership and

could not be out-voted by all of the remaining workers. Accordingly, she concluded that the workers lacked a meaningful stake in either the success or failure of the business such that it did not constitute a *bona fide* partnership. We agree with her analysis and determination, which the record supports.

The significance of a determination that the individuals were not partners is that Kauffman was unable to carry its burden of proving that the individuals were not in an employment relationship. In other words, Kauffman was unable to establish the exemption to "employment" found in Section 4(*1*)(2)(B) of the Law and overcome the presumption that the individuals were employees. In the absence of *bona fide* partner status, therefore, the individuals were employees of Kauffman performing services for remuneration. Accordingly, their services constituted employment and their remuneration constituted wages subject to unemployment compensation tax.

The next issue is whether the final decision conflicts with the Department's advertised position in published pamphlets on its website. Kauffman states in its brief that Pamphlet 1 is entitled "Family Employment, Coverage and Exemption Under the Pennsylvania Unemployment Compensation Law" and Pamphlet 2 is entitled "Limited Liability Companies, UC Tax Liability." In light of the fact that Kauffman was not a LLC during the relevant time period, we will consider only Pamphlet 1.[15] According to counsel for Kauffman, Pamphlet 1 provides that 1) owners of a partnership are self-employed and their remuneration

---

[15] Although these pamphlets were discussed at the hearing, they are not listed in Kauffman's exhibit list and not included with its other exhibits. In addition, the Deputy Secretary did not consider them in rendering her decision. Although they are essentially *dehors* the record, we will briefly consider Pamphlet 1 in that counsel discussed them at the hearing and the presiding officer indicated that she would take judicial notice of them and check the website to verify their contents.

13

is not considered wages and not subject to unemployment compensation tax; and 2) the sole owners and individual partners are employer entities and, thus, cannot be employees. Kauffman's Brief at 31. As the Department notes, the pamphlet provides only a basic overview of the Law and does not purport to be dispositive of unemployment compensation tax liability. Accordingly, we do not find Pamphlet 1 to be of any significance.

Finally, we turn to whether the Department's interpretation and application of the Law violates Kauffman's constitutional rights under the Uniformity Clause, which provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . . ." PA. CONST. art. VIII, § 1. Specifically, Kauffman argues that the Department is treating the nominal partners different from partners from *bona-fide* partnerships based on its perception that nominal partners lack a meaningful stake in the success or failure of the entity. In that regard, Kauffman asserts that there is no statutory language in Pennsylvania partnership law 1) requiring a majority ownership in order to be considered an owner of an entity; or 2) providing that a nominal partner performing services for an entity is an employee based on the amount of his capital contribution, the degree of his management interest or the percentage of profits or losses that he experiences. Finally, it contends that there is no mechanism to ensure that the Department is treating all non *bona-fide* partnerships similarly.[16] Kauffman's position is without merit.

As an initial matter, we are not convinced that the Law necessarily creates a classification subject to a uniformity analysis. In that regard, an

---

[16] To the extent that Kauffman's alleged status as a LLC permeates its constitutional arguments, we decline to address its arguments to that effect.

14

"employe" is defined as "*every* individual . . . who is performing . . . services for an employer in an employment subject to this act." Section 4(i) of the Law (emphasis added). The mere fact that Section 4(*1*)(2)(B) sets forth an exception to the statutory presumption that one who receives wages for services is employed does not create a classification. To the extent that there is a classification, however, Kauffman as the taxpayer pursuing a Uniformity Clause challenge has a heavy burden of demonstrating that a classification employed in a tax statute is unreasonable. *Equitable Life Assurance Soc'y of U.S. v. Murphy*, 621 A.2d 1078, 1087 (Pa. Cmwlth. 1993). Specifically, it has to demonstrate that its nominal partners were not treated in a substantially uniform manner vis-à-vis similarly situated individuals. *Bridon Am. Corp. v. Employer Accounts Review Bd., Bureau of Employment Sec.*, 462 A.2d 340, 344 (Pa. Cmwlth. 1983). We conclude that Kauffman failed to meet this heavy burden.[17]

As evidenced by the test for *bona-fide* partnerships set forth in *Culbertson*, there are many differences between individuals in non *bona-fide* partnerships and partners in *bona-fide* partnerships based on the totality of their respective circumstances. In addition, the two-pronged test set forth in Section 4(*1*)(2)(B) for ascertaining whether an individual falls within the exemption for services excluded from employment is multi-faceted. Accordingly, there is no uniformity problem when the Department applies the Law such that partners in *bona-fide* partnerships who perform services are exempted from an employment

---

[17] In a case where a closely-held corporation filed a review of a decision denying its petition for refund of unemployment compensation taxes assessed and paid on the wages of two of its shareholder-officer-employees, we opined that the employer had no standing to make an equal protection argument on behalf of those employees. *Bagley & Huntsberger, Inc. v. Employer Accounts Review Bd., Bureau of Employment Sec., Dep't of Labor and Indus.*, 383 A.2d 1299 (Pa. Cmwlth. 1978). Here, standing was not raised.

15

designation and individuals in non *bona-fide* partnerships who perform services are not exempted. There is simply no indication that the two groups are similarly situated.

Moreover, if the class is non *bona fide* partnerships, there is no indication that the Department is treating Kauffman's nominal partners differently than other nominal partners in non *bona fide* partnerships merely because the Department learned of Kauffman's potential violation of the Law and pursued an investigation and audit. In that regard, a Uniformity Clause violation is not established merely because an assessment ensued by chance, when a potential employee filed a claim for unemployment compensation benefits without the corresponding employee status. Finally, the absence of a mechanism for detecting other non *bona-fide* partnerships that should be paying unemployment compensation tax, even if the record supported such a claim, does not establish a violation. The absence of a mechanism is illustrative of an enforcement problem, not one of a lack of uniformity.

Accordingly, we affirm.

 

 

**BONNIE BRIGANCE LEADBETTER,**
Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kauffman Metals, LLC,     :
      Petitioner  :
            :
     v.      : No. 2293 C.D. 2014
            :
Department of Labor and Industry, :
Office of Unemployment    :
Compensation Tax Services,   :
      Respondent :

## **O R D E R**

AND NOW, this 15th day of October, 2015, the order of the Department of Labor and Industry is hereby AFFIRMED.

           _____

           **BONNIE BRIGANCE LEADBETTER,**
           Judge